1  PROSKAUER ROSE LLP
   ANTHONY J. ONCIDI (SBN 118135)
2  aoncidi@proskauer.com
   PHILIPPE A. LEBEL (SBN 274032)
3  plebel@proskauer.com
   DIXIE M. MORRISON (SBN 341850)
4  dmorrison@proskauer.com
   2029 Century Park East, 24th Floor
5  Los Angeles, CA 90067-3010
   Telephone:  (310) 557-2900
6  Facsimile:(310) 557-2193

7  Attorneys for Defendants
   MOUNTAIN VIEW PRODUCTIONS, LLC; 51
8  MINDS, LLC; 51 MINDS ENTERTAINMENT,
   LLC; ENDEMOL SHINE US OFFICE, LLC; and
9  ENDEMOL USA HOLDING, INC.

10

11                 **UNITED STATES DISTRICT COURT**

12                **CENTRAL DISTRICT OF CALIFORNIA**

13  SAMANTHA SUAREZ, an individual;         Case No. 2:25-cv-03568 GW (ADSx)
    and GREY DUDDLESTON, an
14  individual,                             [Assigned to District Judge George H.
                                            Wu and Magistrate Judge Autumn D.
15                            Suarez,        Spaeth]

16         vs.                              **DEFENDANTS MOUNTAIN VIEW
                                            PRODUCTIONS, LLC, 51 MINDS,**
17  NBCUNIVERSAL MEDIA, LLC, a              **LLC, 51 MINDS ENTERTAINMENT,**
    Delaware limited liability company;     **LLC, ENDEMOL SHINE US**
18  BRAVO MEDIA, LLC, a Delaware            **OFFICE, LLC, AND ENDEMOL USA**
    limited liability company; MOUNTAIN     **HOLDING, INC.'S MEMORANDUM**
19  VIEW PRODUCTIONS, LLC, a                **OF POINTS AND AUTHORITIES IN**
    California limited liability company; 51 **SUPPORT OF MOTION TO**
20  MINDS, LLC, a Delaware limited          **DISMISS PLAINTIFF SAMANTHA**
    liability company; 51 MINDS             **SUAREZ'S CLAIMS**
21  ENTERTAINMENT, LLC, a New York
    limited liability company; ENDEMOL      [Notice of Motion and Motion,
22  SHINE US OFFICE, LLC, a Delaware        Declaration of Dixie M. Morrison, and
    limited liability company; ENDEMOL      [Proposed] Order filed concurrently
23  USA HOLDING, INC., a Delaware           herewith]
    corporation; GARY KING, an
24  individual; and DOES 1-50, inclusive,   Date: June 26, 2025
                                            Time: 8:30 a.m.
25                          Defendants.     Dept.: Courtroom 9D

26                                          Date Action Filed: March 24, 2025

27                                          (*Los Angeles County Superior Court,
                                            Case No. 25STCV08353*)

28

ENDEMOL DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES
ISO MOTION TO DISMISS PLAINTIFF SAMANTHA SUAREZ'S CLAIMS

# **TABLE OF CONTENTS**

**Page**

I.   INTRODUCTION. ..................................................................................1

II.   FACTUAL BACKGROUND ..................................................................3

    A.   Suarez (a Georgia Resident) Worked On Season 4 of BDSY in Italy...............................................................................................3

    B.   According To Suarez, King Assaulted Her at A Hotel In Sardinia, Italy, On The Cast And Crew's Day Off. .........................................3

    C.   Upon Receiving Suarez's Complaint, The Endemol Defendants Immediately Reprimanded King, Launched An Investigation, And Implemented Corrective Measures. ..................................................4

    D.   After Season 4 Of BDSY Wrapped Filming, Suarez Was Not Hired To Work On Another Below Deck Season............................5

III.   THE COURT SHOULD DISMISS ALL OF SUAREZ'S CLAIMS FOR FAILURE TO STATE ANY COGNIZABLE LEGAL THEORY............5

    A.   The Court Should Dismiss Suarez's Action In Its Entirety Because California Law Does Not Apply Extraterritorially. ........................5

        1.   Suarez's Statutory Claims Fail Because Those Statutes Do Not Apply Extraterritorially. ..................................................6

        2.   Suarez's Common-Law Tort, Negligence, And Public Policy Claims Also Fail Because They Are Based On Conduct Entirely Outside Of California...............................................9

    B.   Suarez's Fourth Cause Of Action Is Statutorily Barred. ...............10

    C.   Suarez's Tort And Civil Rights Causes Of Action Fail To State Causes Of Action Because King's Alleged Assault Was Not Within The Scope Of Employment As A Matter of Law. .............11

        1.   King's Alleged Actions Were Not Reasonably Related Or Incidental To The Tasks Defendants Employed Him To Perform. ................................................................................13

        2.   Nor Was King's Alleged Misconduct Reasonably Foreseeable. .......................................................................15

        3.   Defendants Did Not Ratify King's Alleged Actions............16

    D.   Suarez Cannot Pursue Her Negligence-Based Claims Because the Endemol Defendants Owed Her No Cognizable Duty. .................18

IV.   THE COURT SHOULD DISMISS SUAREZ'S CLAIMS WITH PREJUDICE BECAUSE NO AMENDMENT CAN SAVE THEM. ......21

i

V.    CONCLUSION ............................................................................21

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

ENDEMOL DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES
ISO MOTION TO DISMISS PLAINTIFF SAMANTHA SUAREZ'S CLAIMS

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Acevedo v. eXp Realty, LLC,*
  713 F. Supp. 3d 740 (C.D. Cal. 2024) ................................................................19

*Alma W. v. Oakland Unified Sch. Dist.,*
  123 Cal. App. 3d 133 (1981) .......................................................................12, 13

*Baptist v. Robinson,*
  143 Cal. App. 4th 151 (2006) ......................................................................16, 18

*Brown v. USA Taekwondo,*
  11 Cal. 5th 204 (2021) .........................................................................................18

*Buchanan v. NetJets Servs., Inc.,*
  2018 WL 1933189 (N.D. Cal. Apr. 24, 2018) .....................................................8

*Caltex Plastics, Inc. v. Lockheed Martin Corp.,*
  824 F.3d 1156 (9th Cir. 2016) ..............................................................................5

*Campbell v. Arco Marine, Inc.,*
  42 Cal. App. 4th 1850 (1996) ...........................................................................7, 8

*Daramola v. Oracle Am., Inc.,*
  92 F.4th 833 (9th Cir. 2024) .................................................................................7

*De Martinez v. CRST Expedited, Inc.,*
  2023 WL 4247701 (C.D. Cal. May 10, 2023) ....................................................12

*Dfinity USA Research LLC v. Bravick,*
  2023 WL 2717252 (N.D. Cal. Mar. 29, 2023) .....................................................9

*Di-az v. Tesla, Inc.,*
  2019 WL 7311990 (N.D. Cal. Dec. 30, 2019) ....................................................12

*Doe #2 v. Johnson,*
  2024 WL 4437725 (E.D. Cal. Oct. 7, 2024) .......................................................11

*Doe v. Capital Cities,*
  50 Cal. App. 4th 1038 (1996) ...................................................................2, 19, 20

*Doe v. Pasadena Hosp. Ass'n, Ltd.,*
  2020 WL 1244357 (C.D. Cal. Mar. 16, 2020) ...................................................11

*Doe v. Uber Techs., Inc.,*
  2019 WL 6251189 (N.D. Cal. Nov. 22, 2019) ...................................................14

*Doe v. Uber Techs, Inc.,*
  2020 WL 2097599 (N.D. Cal. May 1, 2020) ......................................................16

ENDEMOL DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES
ISO MOTION TO DISMISS PLAINTIFF SAMANTHA SUAREZ'S CLAIMS

*Ess v. Eskaton Props., Inc.*,
   97 Cal. App. 4th 120 (2002) ..........................................................................18

*Farmers Ins. Grp. v. Cty. of Santa Clara*,
   11 Cal. 4th 992 (1995) ..................................................................2, 14, 15, 19

*Gadda v. State Bar of Cal.*,
   511 F.3d 933 (9th Cir. 2007) ........................................................................21

*Garcia ex rel. Marin v. Clovis Unified Sch. Dist.*,
   2009 WL 2982900 (E.D. Cal. Sept. 14, 2009) ......................................17, 18

*Garcia ex rel. Marin v. Clovis Unified Sch. Dist.*,
   627 F. Supp. 2d 1187 (E.D. Cal. 2009) ....................................12, 17, 18

*Giovinco v. Soc. Sec. Admin.*,
   2017 WL 11631208 (C.D. Cal. Feb. 27, 2017) ............................................12

*Greenwald v. Bohemian Club, Inc.*,
   2008 WL 2331947 (N.D. Cal. June 4, 2008) ................................................11

*Gulaid v. CH2M Hill, Inc.*,
   2016 WL 926974 (N.D. Cal. Mar. 10, 2016) ..................................................8

*Hill v. Workday, Inc.*,
   2024 WL 3012802 (N.D. Cal. June 14, 2024) ..........................................7, 10

*In re NVIDIA Corp. Sec. Litig.*,
   768 F.3d 1046 (9th Cir. 2014) ........................................................................5

*Juarez v. Soc. Fin., Inc.*,
   2021 WL 1375868 ............................................................................................9

*Lisa M. v. Henry Mayo Newhall Mem'l Hosp.*,
   12 Cal. 4th 291 (1995) ........................................................................2, 13, 15

*Lowery v. Reinhardt*,
   2008 WL 550083 (E.D. Cal. Feb. 27, 2008) ........................................13, 16

*Monaghan v. El Dorado Cty. Water Agency*,
   2010 WL 3033780 (E.D. Cal. July 30, 2010) ..............................................13

*O'Connor v. Uber Techs, Inc.*,
   58 F. Supp. 3d 989 (N.D. Cal. Sept. 4, 2014) ................................................9

*Ramos v. Los Rios Cmty. Coll. Dist.*,
   2018 WL 626381 (E.D. Cal. Jan. 29, 2018) ..........................................17, 18

*Rita M. v. Roman Catholic Archbishop*,
   187 Cal. App. 3d 1453 (1986) ........................................................13, 15, 20

*Rulenz v. Ford Motor Co.*,
   2013 WL 2181241 (S.D. Cal. May 20, 2013) ................................................9

iv

*Russo v. APL Marine Servs., Ltd.*,
  135 F. Supp. 3d 1089 (C.D. Cal. 2015), *aff'd*, 694 F. App'x 585 (9th Cir. 2017)
  ...................................................................................................................7, 8, 9, 10

*Rydberg v. U.S. Postal Serv.*,
  2021 WL 1851033 (N.D. Cal. Jan. 21, 2021).........................................................16

*Saridakis v. United Airlines*,
  166 F.3d 1272 (9th Cir. 1999) ...............................................................................18

*Shamoun v. Republic of Iraq*,
  441 F. Supp. 3d 976 (S.D. Cal. 2020) .............................................................14, 16

*Suarez et al v. NBCUniversal Media, LLC et al*,
  Case No. 2:25-cv-1774 (C.D. Cal.), ECF No. 1 (Los Angeles County Superior
  Court Case No. 25STCV05281)..............................................................................1

*Sullivan v. Oracle Corp.*,
  51 Cal. 4th 1191 (2011) ...........................................................................................6

*Taylor v. United States*,
  2013 WL 3223420 (C.D. Cal. June 25, 2013).......................................................16

*Villalobos v. Costco Wholesale Corp.*,
  2023 WL 5108499 (E.D. Cal. Aug. 9, 2023) ...................................................12, 14

*Vizcaino v. Areas USA, Inc.*,
  2015 WL 13573816 (C.D. Cal. Apr. 17, 2015)......................................................20

**STATUTES**

Cal. Civ. Code § 52.4 ..................................................................................................10

Cal. Civ. Code § 52.4(e)..........................................................................................2, 10

Cal. Code Regs., Title 2 § 11008(d)(1)(C)....................................................................6

Cal. Gov't. Code § 12940(h)(1).....................................................................................7

**RULES**

Fed. R. Civ. P. 12(b)(6).................................................................................................5

ENDEMOL DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES
ISO MOTION TO DISMISS PLAINTIFF SAMANTHA SUAREZ'S CLAIMS

## I. **INTRODUCTION.**

Each and every one of the sixteen causes of action asserted by Plaintiff Samantha Suarez ("Suarez") against Defendants Mountain View Productions, LLC; 51 Minds, LLC; 51 Minds Entertainment, LLC; Endemol Shine US Office, LLC; and Endemol USA Holding, Inc. (collectively, the "Endemol Defendants"), as well as NBCUniversal Media, LLC and Bravo Media LLC (erroneously sued as "Bravo Media, LLC") (collectively, the "NBCU Defendants" and, together with the Endemol Defendants, "Defendants"), stems from the alleged overseas actions of a cast member on the television show *Below Deck Sailing Yacht* ("*BDSY*"), Gary King ("King"). Specifically, Suarez alleges that, while filming *BDSY* in Sardinia, Italy, King made sexual advances toward her in a hotel. Even taking her allegations at face value, they unequivocally demonstrate that Defendants are *not* liable and that Suarez's claims should, therefore, be dismissed.[1]

The *only* alleged assault by King (a South African citizen) that Suarez (a Georgia resident) alleges—the conduct that forms the gravamen of the sixteen causes of action in her Complaint—took place thousands of miles away from California and, in fact, outside of the United States. Because this alleged assault is the basis for ***all*** of Suarez's claims, each and every cause of action she asserts is incurably deficient in attempting to apply California law extraterritorially to (1) conduct that took place outside of California and that (2) allegedly injured a non-Californian. Thus, *none* of Suarez's causes of action, all of which are brought under California law, sufficiently state a claim.

---

[1] Suarez and co-plaintiff Grey Duddleston ("Duddleston") filed a prior ***identical*** action on February 25, 2025, which the Endemol Defendants removed to federal court on February 28, 2025. *See Suarez et al v. NBCUniversal Media, LLC et al*, Case No. 2:25-cv-1774 (C.D. Cal.), ECF No. 1 (Los Angeles County Superior Court Case No. 25STCV05281) ("*Suarez I*"). Duddleston and Suarez voluntarily dismissed *Suarez I* on March 24, 2025. *See id.*, ECF No. 12. They refiled a substantially identical Complaint in this action the same day.

ENDEMOL DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES
ISO MOTION TO DISMISS PLAINTIFF SAMANTHA SUAREZ'S CLAIMS

Even setting aside the bar of extraterritoriality, the vast majority of Suarez's causes of action separately fail for other reasons. Suarez's Fourth Cause of Action for gender violence impermissibly seeks to hold Defendants liable *as King's alleged employers* for a statutory cause of action that, by the statute's plain text, "does not establish any civil liability of a person because of his or her status as an employer[.]" Cal. Civ. Code § 52.4(e). Additionally, Suarez's First, Second, Third, Twelfth, Fourteenth, Fifteenth, and Sixteenth Causes of Action for sexual battery, battery, assault, intentional infliction of emotional distress ("IIED"), false imprisonment, and violations of the Ralph and Bane Civil Rights Acts (the "Ralph Act" and "Bane Act," respectively) all fail because they rest entirely upon Defendants' vicarious liability for King's alleged sexual advances. This misconduct, Suarez concedes, was ***decidedly personal in nature***, and ***motivated by King's sexual desire*** rather than in service of Defendants' legitimate business interests. *See* Complaint ("Compl.") ¶ 65 (emphasis added). Thus, as a matter of law, any such actions are outside the scope of King's alleged employment. *See, e.g.*, *Lisa M. v. Henry Mayo Newhall Mem'l Hosp.*, 12 Cal. 4th 291, 301 (1995); *Farmers Ins. Grp. v. Cty. of Santa Clara*, 11 Cal. 4th 992, 1004–05 (1995). For this reason, even if King acted as Suarez now contends, Defendants are not and cannot be held legally responsible as a matter of law.

Likewise, Suarez's Tenth and Thirteenth Causes of Action for negligent hiring, supervision, and retention and negligent infliction of emotional distress ("NIED") similarly fail to state viable claims. Defendants had no actual or constructive knowledge of past behavior or other factors that would indicate King posed a particular risk of sexual harassment or assault to Suarez (or anyone else). Accordingly, Defendants did not owe Suarez any duty of care, and both negligence-based causes of action should be dismissed. *See Doe v. Capital Cities*, 50 Cal. App. 4th 1038, 1054 (1996).

For these reasons and others explained below, all of Suarez's causes of action against Defendants fail to state claims on which relief can be granted. Accordingly,

the Court should dismiss Suarez's claims in their entirety as to Defendants under Federal Rule of Civil Procedure ("FRCP") 12(b)(6).

## II.  FACTUAL BACKGROUND[2]

### A.  Suarez (a Georgia Resident) Worked On Season 4 of *BDSY* in Italy.

Suarez and Duddleston worked as crew members on Season 4 of *BDSY*, which filmed in Sardinia, Italy in the summer of 2022. Compl. ¶ 2. Suarez worked as a hair and makeup artist on the production. *Id*. As set forth in the Complaint, both Suarez and Duddleston are, and were at the time of the events alleged, Georgia residents. *Id*. ¶¶ 15–16.

### B.  According To Suarez, King Assaulted Her at A Hotel In Sardinia, Italy, On The Cast And Crew's Day Off.

On July 3, 2022, a "dark day" when the cast and crew of *BDSY* were off work, Suarez visited *BDSY* cast member King in his hotel room. *Id*. ¶¶ 48, 51. According to Suarez, King allegedly asked Suarez to "climb into bed with" him and to spend the night. *Id*. ¶¶ 52–53. Later that night, Suarez claims that she returned to King's room to bring him water and food. *Id*. ¶ 55. King allegedly "grabbed" Suarez, "held her restrained by her upper body and arms[,] . . . pressed his entire body against her[,] . . . and slam[med] the door shut with both of his hands and his entire body weight." *Id*. King also allegedly "press[ed] his erect penis against [Suarez's] body." *Id*. ¶ 97. Suarez found King's actions so shocking that "[s]he was sure she was about to be raped." *Id*. ¶ 55. However, upon Suarez receiving a phone call, King let Suarez go. *Id*. at ¶ 56.

---

[2] Defendants assume the truth of the allegations in the cited portions of Suarez's Complaint **for purposes of this Motion *only*** and do not concede they are true for any other purpose.

ENDEMOL DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES ISO MOTION TO DISMISS PLAINTIFF SAMANTHA SUAREZ'S CLAIMS

**C.**    **Upon Receiving Suarez's Complaint, The Endemol Defendants Immediately Reprimanded King, Launched An Investigation, And Implemented Corrective Measures.**

Per Suarez, later on July 3, 2022, she ran into *BDSY* co-executive producer Ryan Veerkamp ("Veerkamp") "and immediately told him what had … happened" with King. *Id*. ¶ 57. Suarez claims that "Veerkamp seemed shocked and asked Suarez if she was okay." *Id*. The very next morning, on July 4th, Veerkamp met again with Suarez, "told her that production would speak to King and that what [King] did was not ok," and "initiated a meeting with the production leadership team." *Id*. ¶ 58.

Later on July 4th, Suarez met with Veerkamp and other senior members of the production, including showrunner Courtland Cox ("Cox"), to discuss Suarez's report about King's behavior. *Id*. ¶ 59. Cox "apologiz[ed] to Suarez for what had happened," "vow[ed] to speak with King personally," and "told [Suarez] in no uncertain terms that King would be fired if something like this happened again." *Id*. ¶ 60. Suarez concedes that the Endemol Defendants in fact "warned [King] that he would be fired if something like that were to happen again." *Id*. ¶ 7.

Cox spoke with King about his behavior later that very same day and reported back to Suarez "that what had occurred was unacceptable." *Id*. ¶ 61. Cox also "asked Suarez what she wanted to happen next and told her that production would do whatever she was comfortable with." *Id*. Suarez responded that she "wanted no further interactions with" King. *Id*. Cox "sent Suarez an email memorializing the discussions after the meeting" and "emphasized that if any further issues involving King arose, King would be terminated." *Id*. ¶ 62.

The Endemol Defendants launched an investigation into Suarez's complaint against King, pursuant to which the lead investigator contacted Suarez to interview her. *Id*. ¶ 66. Upon the investigation's conclusion, the lead investigator reached out to Suarez to inform her that the Endemol Defendants would "be instituting more …

4

[human resources] check-ins on [the] production[] going forward" and "expanding the conversations around sexual harassment and respect in the workplace." *Id.* ¶ 83.

The Endemol Defendants honored Suarez's request not to interact with King as part of her job, as Suarez's Complaint alleges no further interactions with King.

### D.    After Season 4 Of *BDSY* Wrapped Filming, Suarez Was Not Hired To Work On Another *Below Deck* Season.

After filming wrapped for Season 4 of *BDSY*, Suarez returned home to Georgia. *Id.* ¶ 81. After some time, while still in Georgia, Suarez learned that she would not be "invited back" to work on the upcoming *Below Deck* season. *Id.* According to Suarez, she "had been placed on a 'do not hire' list." *Id.*

## III.    THE COURT SHOULD DISMISS ALL OF SUAREZ'S CLAIMS FOR FAILURE TO STATE ANY COGNIZABLE LEGAL THEORY.

Courts analyze a complaint's sufficiency based on its well-pleaded factual allegations as well as "its attached exhibits, documents incorporated by reference, and matters properly subject to judicial notice." *In re NVIDIA Corp. Sec. Litig.*, 768 F.3d 1046, 1051 (9th Cir. 2014). A complaint must be dismissed under FRCP 12(b)(6) if it does not state a cognizable legal theory or allege sufficient facts to support a legal theory. *Caltex Plastics, Inc. v. Lockheed Martin Corp.¸* 824 F.3d 1156, 1159 (9th Cir. 2016). ***All*** of Suarez's claims fail this test.

### A.    The Court Should Dismiss Suarez's Action *In Its Entirety* Because California Law Does Not Apply Extraterritorially.

A Plaintiff like Suarez, who is "and at all relevant times was"[3] a resident of the State of Georgia and who relies exclusively on occurrences outside of California (in fact, on another continent) in support of her claims, cannot avail herself of the protections of California law. Indeed, a presumption exists *against* extraterritorial application of California law. As the California Supreme Court has stated:

---

[3] Compl. ¶ 15.

ENDEMOL DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES ISO MOTION TO DISMISS PLAINTIFF SAMANTHA SUAREZ'S CLAIMS

> However far the Legislature's power may theoretically extend, we presume the Legislature did not intend a statute to be operative, with respect to occurrences outside the state, . . . unless such intention is clearly expressed or reasonably to be inferred from the language of the act or from its purpose, subject matter or history.

*Sullivan v. Oracle Corp.*, 51 Cal. 4th 1191, 1207 (2011) (internal quotations omitted). No state statute, legal precedent, or other authority provides that any of the theories in Suarez's Complaint apply to actions that occurred on the coast of the Mediterranean Sea, over 6,000 miles away, to a non-California resident, merely because some of the defendants in some form or fashion do business within California. There is simply no nexus between Suarez, her claims, and the state of California. A holding that Suarez can avail herself of California's laws with these allegations would transform the California court system into the Hague and encourage the very forum-shopping that resulted in the instant lawsuit.

    1.   <u>Suarez's Statutory Claims Fail Because Those Statutes Do Not Apply Extraterritorially.</u>

There is not a single link connecting Suarez's allegations of harassment, discrimination, or retaliation under the FEHA or the California Labor Code (including the purported non-renewal of her contract and "black-ball[ing]")—nor her allegations of gender violence or violations of the Ralph and Bane Acts under the California Civil Code—to the State of California. Compl. ¶ 82. Under these circumstances, the Court should dismiss Suarez's Fourth through Ninth, Fifteenth, and Sixteenth Causes of Action under the Civil Code, FEHA, and Labor Code.

The California Legislature did *not* intend for the FEHA to apply to nonresidents where the alleged unlawful conduct occurred outside of California, without involvement from anyone within the State, as courts and the FEHA regulations confirm. *See* Cal. Code Regs., tit. 2 § 11008(d)(1)(C) ("[E]mployees located outside of California are not themselves covered by the protections of the Act if the allegedly unlawful conduct did not occur in California, or the allegedly unlawful conduct was not ratified by decision makers or participants in unlawful conduct located in

California."); *Campbell v. Arco Marine, Inc.*, 42 Cal. App. 4th 1850, 1852 (1996) ("[T]he FEHA was not intended to apply to non-residents where, as here, the tortious conduct took place out of this state's territorial boundaries."). The same is true of Suarez's claims under the Labor Code and the Civil Code. *See, e.g.*, *Daramola v. Oracle Am., Inc.*, 92 F.4th 833, 843 (9th Cir. 2024) (affirming dismissal of Canadian resident's claim; "the California laws that [plaintiff] invokes do not overcome this presumption" against extraterritoriality); *Hill v. Workday, Inc.*, 2024 WL 3012802, at *11 (N.D. Cal. June 14, 2024) ("[E]ven under this alternative legal standards framework for extraterritoriality agreed to by the Parties, the Court finds insufficient basis for the extraterritorial application of the California Labor Code."); *id.* at *11–12 (applying presumption against extraterritoriality to plaintiff's Civil Code claims).

California courts look to both the *situs* of (1) the plaintiff's employment and (2) the material elements of the cause of action to determine if a state employment law should be applied extraterritorially. *Russo v. APL Marine Servs., Ltd.*, 135 F. Supp. 3d 1089, 1094 (C.D. Cal. 2015), *aff'd*, 694 F. App'x 585 (9th Cir. 2017) (collecting cases); Cal. Govt. Code § 12940(h)(1). Neither the *situs* of Suarez's employment nor the material elements of her claims occurred in California.

*Campbell* is particularly instructive given the striking similarities to the facts here. In that case, a Washington-resident employee alleged claims for sexual harassment against her California-headquartered employer stemming from conduct that took place on board ships transporting crude oil. *Campbell*, 42 Cal. App. 4th at 1852–53. Although the plaintiff began her employment by flying to California to board her original ship, all of the "harassment of which she complain[ed] took place while the ships were at sea except for one incident which occurred in the State of Washington." *Id.* at 1858. Even though certain decisions related to the alleged harasser had been made or ratified in California, the court nonetheless found that "[a]pplying the FEHA in this situation would raise **serious constitutional concerns**." *Id.* (emphasis added). As the court explained, "a line must be drawn between those

ENDEMOL DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES ISO MOTION TO DISMISS PLAINTIFF SAMANTHA SUAREZ'S CLAIMS

situations where the law applies and those where it does not. Appellant would have the law applied to all California-based employers regardless of where the aggrieved employee resides and regardless of where the tortious conduct took place. We reject that view." *Id.* at 1859.

Suarez's statutory causes of action are predicated on King's alleged assault of Suarez in Italy. Given the absence of any connection between the alleged misconduct, Suarez, King, and California, the presumption against extraterritoriality applies in full, and the Court should dismiss Suarez's claims on those grounds. *See Russo*, 135 F. Supp. 3d at 1095 (dismissing sexual harassment claim because the alleged harassment occurred, and majority of plaintiff's job duties were performed, in international waters).

Similarly, as to the alleged discrimination and retaliation (*i.e.*, the non-renewal of Suarez's contract and alleged placement on a "do not hire" list), Suarez does not adequately allege that any discriminatory act or omission occurred in, or even stemmed from, California. *Id*. With no connection between these alleged adverse employment actions and California, Suarez's claims must fail. As stated in *Campbell*, the FEHA does not apply "to all California-based employers regardless of where the aggrieved employee resides and regardless of where the tortious conduct took place." *Campbell*, 42 Cal. App. 4th at 1859.

For this reason, it is irrelevant that Suarez alleges that "the decision not to renew Suarez's . . . employment contract[] in retaliation for [her] disclosures was made in California." Compl. ¶ 35. This allegation is not only conclusory but also fails to identify the specific individuals who purportedly made this decision, thus falling short of the pleading necessary to establish a California nexus. *See Buchanan v. NetJets Servs., Inc.*, 2018 WL 1933189, at *3 (N.D. Cal. Apr. 24, 2018) (no application of California law where "Plaintiff does not identify who in California participated in or ratified any of the alleged wrongful conduct"); *Gulaid v. CH2M Hill, Inc.*, 2016 WL 926974, at *4 (N.D. Cal. Mar. 10, 2016) (finding that plaintiff

did not establish nexus to California where he did not "specifically identify connections between the alleged discriminatory conduct and the activities of *particular* employees of defendants in California") (emphasis added); *see also Juarez v. Soc. Fin., Inc.*, 2021 WL 1375868, at *8 (rejecting as "conclusory" the allegation that defendant's "decision-making . . . occurs in California").[4]

Given the presumption against extraterritoriality applicable to Suarez's statutory claims and the absence of *any* connection between California and the alleged non-renewal of Suarez's contract or placement on a "do not hire list," Suarez's causes of action premised upon those alleged acts are legally deficient and should be dismissed.

   2. <u>Suarez's Common-Law Tort, Negligence, And Public Policy Claims Also Fail Because They Are Based On Conduct Entirely Outside Of California.</u>

The *entirety* of the alleged tortious misconduct underlying Suarez's claims[5] occurred in Sardinia and (possibly) Georgia, where Suarez resides. Compl. ¶¶ 41, 48, 51–56, 81. Therefore, while there exists some dispute within the judiciary as to whether the presumption against extraterritoriality applies to common-law tort claims under California law,[6] even assuming *arguendo* that there is no presumption against extraterritoriality applicable to these tort claims, Suarez's claims should be dismissed.

---

[4] It is also irrelevant that Suarez alleges that she "was required to sign on-boarding documents providing, among other things, that her 'hire state' and 'work state' would be California," as "state of employment contract . . . [is] not [a] material element[] of a FEHA claim and insufficient to overcome the extraterritorial presumption." *Rulenz v. Ford Motor Co.*, 2013 WL 2181241, at *3 (S.D. Cal. May 20, 2013); *see also Dfinity USA Research LLC v. Bravick*, 2023 WL 2717252, at *4 (N.D. Cal. Mar. 29, 2023) ("[A] California choice of law clause—without any indication of an exclusion—incorporates California's presumption against extraterritoriality and consequent implicit geographical limitation."); *O'Connor v. Uber Techs, Inc.*, 58 F. Supp. 3d 989, 1005 (N.D. Cal. Sept. 4, 2014) (same).

[5] Suarez alleges the common-law tort claims of Sexual Battery, Battery, Assault, Negligent Hiring/Retention/Supervision of an Employee, Wrongful Termination in Violation of Public Policy, IIED, NIED, and False Imprisonment.

[6] *Compare Russo*, 135 F. Supp. 3d at 1096 ("[E]ven though the presumption against extraterritoriality does not apply to common law claims, there are still limits on the extraterritorial application of California law.") (citing *Morrison v. Nat'l Australia*

To apply California law, Suarez must show that "the conduct which gives rise to liability occur[ed] in California." *Russo*, 135 F. Supp 3d at 1096 (citing *Diamond*, 19 Cal. 4th at 1059) (cleaned up). In *Russo*, the plaintiff asserted a common-law claim for sexual harassment under the California Constitution, which was premised on an alleged sexual advance on a boat in international waters. 135 F. Supp. 3d at 1094–96. The court held that, since all of the misconduct giving rise to liability occurred outside of California, the plaintiff could not avail herself of California law. *Id.* at 1096.

*Russo* squarely applies here. As in *Russo*, all of the alleged conduct underlying Suarez's tort claims—the alleged assault and non-renewal of her contract—occurred in Sardinia and/or Georgia. *See* Compl. at ¶¶ 13, 57–86. Plaintiff does not allege a single fact in support of any of her common-law claims that occurred in California or even any nexus between her claims and the State of California. For these reasons, the Court should dismiss Plaintiff's tort causes of action. *See Hill*, 2024 WL 3012802, at *12–13 (dismissing plaintiff's IIED claim on extraterritoriality grounds even where some of the alleged underlying misconduct occurred in California because plaintiff worked from Maryland and the majority of the harm was felt there).

### B.    Suarez's Fourth Cause Of Action Is Statutorily Barred.

Suarez's Fourth Cause of Action for Gender Violence pursuant to section 52.4 of the California Civil Code ("Section 52.4") fails as to the Endemol Defendants because the plain text of Section 52.4 forestalls liability: "Notwithstanding any other laws that may establish the liability of an employer for the acts of an employee, ***this section does not establish any civil liability of a person because of his or her status as an employer, unless the employer personally committed an act of gender violence***." Cal. Civ. Code § 52.4(e) (emphasis added).

---

*Bank Ltd.*, 561 U.S. 247, 255 (2010)), with *Hill*, 2024 WL 3012802, at *12 ("The general presumption against extraterritorial application of California law applies [to California tort law], as with other causes of action.") (citing *Sullivan*, 51 Cal. 4th at 1207).

Suarez does not allege that *any* of the Defendants personally committed any act that could constitute "the use, attempted use, or threatened use of physical force" or "[a] physical intrusion or physical invasion of a sexual nature under coercive conditions." Indeed, Suarez *only* describes acts allegedly committed by King under this cause of action in her Complaint. *See* Compl. ¶¶ 124–27.

Accordingly, the only possible grounds that Suarez could have for holding Defendants liable for gender violence is in their capacity as King's alleged employer(s). Yet, Section 52.4 flatly prohibits this avenue of employer liability, as courts repeatedly have recognized. *See, e.g.*, *Doe v. Pasadena Hosp. Ass'n, Ltd.*, 2020 WL 1244357, at *8 (C.D. Cal. Mar. 16, 2020) ("Section 52.4(e) of the California Civil Code exempts employers from liability on a claim of gender violence for the acts of their employees."); *Doe #2 v. Johnson*, 2024 WL 4437725, at *3–4 (E.D. Cal. Oct. 7, 2024) (finding that plaintiff "fail[ed] to state a claim" against employer defendants even where she "sufficiently pled a claim for gender violence against" an individual defendant); *Greenwald v. Bohemian Club, Inc.*, 2008 WL 2331947, at *7 (N.D. Cal. June 4, 2008).

Thus, the Court should dismiss Suarez's Fourth Cause of Action with prejudice.

**C.    <u>Suarez's Tort And Civil Rights Causes Of Action Fail To State
Causes Of Action Because King's Alleged Assault Was Not Within
The Scope Of Employment As A Matter of Law.</u>**

Suarez's causes of action for sexual battery, battery, assault, IIED, false imprisonment, and violations of the Ralph and Bane Acts—*i.e.*, her First through Third, Twelfth, and Fourteenth through Sixteenth Causes of Action—stem ***entirely*** from King's alleged sexual assault on July 3rd. Setting aside that there is no basis for applying California law to conduct that occurred *entirely* in Italy, the ***only*** way Defendants possibly could be held vicariously liable for King's alleged actions is if that alleged "sexually motivated physical assault" fell within the scope of King's

ENDEMOL DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES
ISO MOTION TO DISMISS PLAINTIFF SAMANTHA SUAREZ'S CLAIMS

employment. Compl. ¶ 65; *see generally Alma W. v. Oakland Unified Sch. Dist.*, 123 Cal. App. 3d 133 (1981) (school district not vicariously liable for custodian molesting a student because sexual molestation not within custodian's scope of employment); *Di-az v. Tesla, Inc.*, 2019 WL 7311990, at *14–15 (N.D. Cal. Dec. 30, 2019) (vicarious liability applies to Ralph and Bane Act claims). Here, Suarez's own allegations demonstrate it clearly was not.

To demonstrate that King's conduct was within the scope of his employment, Suarez needed to allege facts demonstrating that his actions either were: (a) required or incident to the duties that Defendants employed King to perform; or (b) reasonably foreseeable in light of Defendants' business or King's responsibilities. *See De Martinez v. CRST Expedited, Inc.*, 2023 WL 4247701, at *11 (C.D. Cal. May 10, 2023) (quotations omitted). Even at the pleading stage, "[t]he burden of proof is on the plaintiff to demonstrate that the relevant conduct was committed within the scope of employment." *Id.* at *10. A burden that Suarez cannot meet.

As California courts repeatedly have held, in cases of alleged sexual misconduct, vicarious liability ***only*** attaches in rare and unusual circumstances not present here.[7] "California ***precludes*** vicarious liability for sexual torts not because they are unforeseeable, but because ***they are virtually defined as outside the scope of employment***." *Giovinco v. Soc. Sec. Admin.*, 2017 WL 11631208, at *7 (C.D. Cal. Feb. 27, 2017) (emphasis added); *see also Villalobos v. Costco Wholesale Corp.*, 2023 WL 5108499, at *14 (E.D. Cal. Aug. 9, 2023) ("The general rule is that where an employee commits acts of sexual misconduct during the course of his work, such acts are outside the scope of his employment, and no vicarious liability attaches.").

---

[7] Because Suarez's Fourteenth Cause of Action for false imprisonment arises out of the same alleged sexual misconduct that forms her sexual assault claims, she cannot allege that Defendants are vicariously liable for that cause of action either, for the same reasons. *See* Compl. ¶ 223; *Garcia ex rel. Marin v. Clovis Unified Sch. Dist.*, 627 F. Supp. 2d 1187, 1201 (E.D. Cal. 2009) (dismissing false imprisonment claim under *respondeat superior* where it was based on the same incident of alleged sexual misconduct).

ENDEMOL DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES
ISO MOTION TO DISMISS PLAINTIFF SAMANTHA SUAREZ'S CLAIMS

Suarez's allegations unequivocally demonstrate that King's alleged sexual assault was neither reasonably related to his work nor reasonably foreseeable and, therefore, not Defendants' responsibility as a matter of law.

1. <u>King's Alleged Actions Were Not Reasonably Related Or Incidental To The Tasks Defendants Employed Him To Perform.</u>

Suarez's allegations confirm that King's conduct had no connection to work whatsoever but rather were "sexually motivated." Compl. ¶ 65. On its own, this allegation confirms that Defendants are not legally responsible for King's alleged misconduct. *See, e.g.*, *Lisa M.*, 12 Cal. 4th at 301 ("[A] sexual tort will not be considered engendered by the employment unless its motivating emotions were fairly attributable to work-related events or conditions"); *Monaghan v. El Dorado Cty. Water Agency*, 2010 WL 3033780, at *9 (E.D. Cal. July 30, 2010) (no vicarious liability for sexual harassment where "Plaintiff alleges no facts that could plausibly suggest that [the perpetrator] was serving the Agency when he engaged in the conduct at issue"); *Lowery v. Reinhardt*, 2008 WL 550083, at *6 (E.D. Cal. Feb. 27, 2008) (no vicarious liability where alleged perpetrator's actions "were taken solely for personal gratification, were unconnected to his employment, were not incidental to his duties as a physician, and were a substantial deviation from his duties as a physician for personal purposes").

Suarez's sole basis for seeking to hold Defendants liable is that King's alleged employment provided an opportunity for the alleged wrongful acts. However, that is plainly insufficient. *See id.* at *6 n.16 (that the alleged perpetrator's "employment brought him in contact with" the plaintiff, "without more, is insufficient for respondeat superior liability to attach"). Rather, the tort must be *incident to* the legitimate work duties performed by the employee. *See Rita M. v. Roman Catholic Archbishop*, 187 Cal. App. 3d 1453, 1461 (1986) (no vicarious liability for priest's sexual assault because "[p]laintiffs could not seriously contend that sexual relations with parishioners are either required by or instant to a priest's duties"); *Alma W.*, 123

ENDEMOL DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES ISO MOTION TO DISMISS PLAINTIFF SAMANTHA SUAREZ'S CLAIMS

Cal. App. 3d at 140–41 (no vicarious liability for custodian molesting a child because "[s]exual molestation is in no way related to mopping floors, cleaning rooms, or any of the other tasks that are required of a school custodian"); *Shamoun v. Republic of Iraq*, 441 F. Supp. 3d 976, 994 (S.D. Cal. 2020) (no vicarious liability for sexual assault or false imprisonment because "sexual relations with—or false imprisonment of—a polling place employee are not required or incident to a polling place supervisor's duties"); *Doe v. Uber Techs., Inc.*, 2019 WL 6251189, at *4 (N.D. Cal. Nov. 22, 2019) (dismissing complaint that "does not plausibly allege that the sexual assault arose from the assailant's job to drive Plaintiff to her chosen destination").

Here, King's alleged actions were in no way incident to his legitimate duties related to performing as an on-camera cast member on *BDSY*. The alleged July 3rd assault took place on a "dark day," when, according to Suarez, "cast and crew were off work." Compl. ¶¶ 48, 51. Suarez's own characterization of King's alleged acts underscores just how far outside the scope of his employment the alleged off-camera assault was. *See id*. ¶¶ 3 (King "lunged towards [Suarez], used his arms to grab her by her upper body, and restrained her with his tight grip around her body and arms. . . . Suarez was sure she would be raped."), 97 ("The conduct of King in groping Suarez and restraining her while pressing his erect penis against her body . . . constitutes sexual battery."). Rather, even if true, King's alleged misdeeds toward Suarez were separate, aberrant events that were a "substantial deviation" from any legitimate duties, for which Defendants are not liable as a matter of law. *See Farmers Ins.*, 11 Cal. 4th at 1004–05 (1995) ("[A]n employer will not be held vicariously liable for an employee's malicious or tortious conduct if the employee *substantially* deviates from the employment duties for personal purposes.") (emphasis original); *Villalobos*, 2023 WL 5108499, at *14 (no vicarious liability where "there was no business purpose or benefit to [alleged perpetrators'] actions").

*Lisa M.* is particularly instructive. In that case, the court found that the employer of an ultrasound technician who sexually assaulted a patient under the guise

of medical care only 10 minutes after a legitimate procedure on the patient was ***not*** vicariously liable because the technician's actions were not within the scope of his employment. *See Lisa M.*, 12 Cal. 4th at 295 (emphasis added). Although the circumstances of the technician's examination made his sexual assault possible (*i.e.*, by providing the opportunity), the court determined that "[t]he technician's decision to engage in conscious exploitation of the patient did not *arise out of* the performance of the examination." *Id.* at 301 (emphasis in original).

King's alleged actions toward Suarez were even more attenuated from his duties. Whereas an ultrasound technician's work duties actually may necessitate touching patients' intimate parts while they are already in a state of undress, ***nothing*** about King's official duties involved (let alone required) grabbing a hair and makeup artist, pressing his body against her, keeping her in his room against her will, or rubbing his genitals on her. Accordingly, as a matter of law, King's purported assault was not related to his duties.

## 2.    Nor Was King's Alleged Misconduct Reasonably Foreseeable.

Even setting aside that King's alleged assault was a significant deviation from his duties, any such conduct was not foreseeable from the nature of either those duties or Defendants' enterprise, generally. "'[F]oreseeability' as a test for *respondeat superior* merely means that *in the context of the particular enterprise* an employee's conduct is not so unusual or startling that it would seem unfair to include the resulting loss in the employer's cost of doing business." *Farmers Ins.*, 11 Cal. 4th 992, 1004 (quotations omitted) (emphasis original). For an employer to be vicariously liable, the employee's sexual misconduct must be "foreseeable, not in an omniscent [sic] way, but in the relevant sense." *Rita M.*, 187 Cal. App. 3d at 1461.

California state and district courts repeatedly have refused to assign vicarious liability to employers where an employee's sexual misconduct bore no relation to their job duties or the employer's enterprise. *See, e.g.*, *id.* at 1461 ("It would defy every notion of logic and fairness to say that sexual activity between a priest and a

parishioner is characteristic of the Archbishop of the Roman Catholic Church."); *Taylor v. United States*, 2013 WL 3223420, at *4 (C.D. Cal. June 25, 2013) ("If sexual acts are unforeseeable in a context where an employee performs work that requires 'intimate' physical contact, as in *Lisa M.*, it stands to reason that, *a fortiori*, sexual acts amidst the physically attenuated interaction of mail delivery are at least as unforeseeable.") (citations omitted); *Rydberg v. U.S. Postal Serv.*, 2021 WL 1851033, at *4 (N.D. Cal. Jan. 21, 2021) (sexual harassment not within mail deliverer's scope of employment because it "is not a generally foreseeable part of delivering the mail"); *Shamoun*, 441 F. Supp. 3d at 994 (sexual assault of plaintiff not foreseeable because "[s]exual assault . . . of a polling place employee by a supervisor is not characteristic of facilitating an election"); *Lowery*, 2008 WL 550083, at *6.[8]

Similarly, nothing about Defendants' business of producing or airing television content would make it "foreseeable" to them that cast members would sexually assault off-camera crew members as part of their duties. Therefore, King's actions were not foreseeable as a matter of law.

### 3.    Defendants Did Not Ratify King's Alleged Actions.

Suarez cannot alternatively establish Defendants' vicarious liability for King's alleged assault on the grounds that Defendants "ratified" King's conduct. *See Baptist v. Robinson*, 143 Cal. App. 4th 151, 169 (2006). Indeed, Suarez's ***own allegations*** clearly establish that Defendants did not ratify King's alleged actions but, rather, rapidly attempted to address and correct any misconduct by King and accommodate Suarez. Defendants "warned" King "that he would be fired if something like [the alleged July 3rd assault] were to happen again,'" "apologiz[ed] to Suarez for what had happened to her and vow[ed] to speak with King personally," and "confirmed . . . that

---

[8] It is also irrelevant to the foreseeability analysis whether King's employment may have provided him with the ***opportunity*** to allegedly assault Suarez. *See Doe v. Uber Techs, Inc.*, 2020 WL 2097599, at *2 (N.D. Cal. May 1, 2020) (rejecting "argument that the tort here was foreseeable because it is closely related to the nature of Uber's business and it arose directly out of the opportunities created by Uber's business operations").

ENDEMOL DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES
ISO MOTION TO DISMISS PLAINTIFF SAMANTHA SUAREZ'S CLAIMS

what had occurred was unacceptable." Compl. ¶¶ 7, 60–61. Further, Defendants "told [Suarez] that production would do whatever she was comfortable with," and, when "Suarez told them she was uncomfortable being around King and wanted no further interactions with him," her Complaint shows that production honored that request, as she alleges no further personal interactions with King. *Id*. ¶ 61.

The Endemol Defendants also launched an investigation into Suarez's complaint, pursuant to which the lead investigator contacted Suarez to interview her. *Id*. ¶ 66. The Endemol Defendants also undertook corrective policy changes in response to Suarez's complaint, informing Suarez that they would "be instituting more [human resources] check-ins on productions going forward" and implementing additional training around sexual harassment and respect. *Id*. ¶ 83.

The Complaint thus "does not plausibly allege ratification" because it shows that the Endemol Defendants, by taking clear remedial steps in response to Suarez's complaint, "did not adopt [King's] conduct as [their] own." *Garcia ex rel. Marin v. Clovis Unified Sch. Dist.*, 2009 WL 2982900, at *18 (E.D. Cal. Sept. 14, 2009). The Endemol Defendants' actions are like that of the defendant in *Garcia*, where the court dismissed the plaintiff's ratification argument for failure to state a claim. While the Endemol Defendants did not terminate King, "an employer need not always terminate an employee in order to avoid ratification." *Garcia ex rel. Marin*, 627 F. Supp. 2d at 1203; *see also Ramos v. Los Rios Cmty. Coll. Dist.*, 2018 WL 626381, at *1 (E.D. Cal. Jan. 29, 2018) ("[T]he omission to dispense with the services of the offender, standing by itself and unsupported by any other circumstances indicating the employer's approval of his course, is never sufficient to establish ratification.") (quoting *Edmunds v. Atchison, T. & S.F. Ry. Co.*, 174 Cal. 246, 249 (1917)).

Instead, the Endemol Defendants "act[ed] to change the circumstances facing [Suarez] (a form of redress)," just like the defendant school district in *Garcia*. 627 F. Supp. 2d at 1203. For example, the Endemol Defendants made it so that Suarez did not have to interact with King, much like the *Garcia* defendant removed the plaintiff

from the alleged perpetrator's classroom. *Id.* The Endemol Defendants also launched an investigation into Suarez's complaint against King, "found that [King's] conduct was unprofessional and unacceptable, and told [King] that his conduct must change or that he would face further discipline including possible termination." *Garcia*, 2009 WL 2982900, at *18; *see also Baptist*, 143 Cal. App. 4th at 170 (no ratification where employer instructed employee to stop the acts in question); *Ramos*, 2018 WL 626381, at *1 (no ratification where "the District investigated and responded to plaintiff's complaints").

Thus, Suarez decisively has not met her burden to show Defendants bear any liability for King's alleged misconduct. Accordingly, the Court should dismiss Suarez's First through Third, Twelfth, and Fourteenth through Sixteenth Causes of Action with prejudice.

### D.    <u>Suarez Cannot Pursue Her Negligence-Based Claims Because the Endemol Defendants Owed Her No Cognizable Duty.</u>

Suarez's Tenth and Thirteenth Causes of Action for negligent hiring, supervision, and retention and NIED also fail because she cannot hold Defendants directly liable for King's alleged misconduct under a negligence theory. "Recovery for negligence depends as a threshold matter on the existence of a legal duty of care. Duty is not universal; not every defendant owes every plaintiff a duty of care." *Brown v. USA Taekwondo*, 11 Cal. 5th 204, 213 (2021) (citations omitted); *Ess v. Eskaton Props., Inc.*, 97 Cal. App. 4th 120, 126 (2002) ("Negligent infliction of emotional distress is not an independent tort; it is the tort of negligence to which the traditional elements of duty, breach of duty, causation, and damages apply."). Therefore, to allege a claim for either NIED or negligent hiring, retention, or supervision, Suarez was required to plead sufficient and specific facts to establish that Defendants owed her a legally cognizable duty of care.

Whether Defendants had such a duty turns on whether King's alleged actions were foreseeable to Defendants. *See Saridakis v. United Airlines*, 166 F.3d 1272, 1279

n.8 (9th Cir. 1999) (plaintiff "must prove the element of forseeability [sic]" to state a NIED claim); *Doe v. Capital Cities*, 50 Cal. App. 4th 1038, 1054 (1996) ("Liability [for negligent hiring, training, or supervision] is based upon the facts that the employer knew or should have known that hiring the employee created a ***particular*** risk or hazard ***and that particular harm materializes***.") (emphasis added); *Acevedo v. eXp Realty, LLC*, 713 F. Supp. 3d 740, 803 (C.D. Cal. 2024) ("A claim for negligent supervision requires a plaintiff to allege that a particular risk of harm was foreseeable.").

In this specific negligence context, whether conduct is foreseeable turns on the "level of probability which would lead a prudent person to take effective precautions." *Farmers Ins.*, 11 Cal. 4th at 1004 (quotations omitted). Here, Suarez's allegations demonstrate that King's conduct was not remotely foreseeable.

***Nowhere*** in the Complaint does Suarez allege that Defendants had any actual or constructive knowledge that King posed a particular risk of sexually assaulting a colleague ***prior to*** King's alleged July 3rd assault of Suarez.[9] Suarez baldly pleads that Defendants "knew or reasonably should have known that King had a propensity to . . . engage in unwelcome, sexually aggressive behavior with coworkers" but fails to allege any facts to support this sweeping contention. Compl. ¶ 189. While alleging that King "had a well-deserved reputation for sexually aggressive behavior and alcohol abuse," Suarez does not allege that King had any reputation for ***sexual assault*** or ***sexual harassment***, merely that he "had hooked up with a number of female cast members in past seasons"—without any facts indicating that such "hookups" were anything but consensual. *Id*. ¶ 47; *see also Capital Cities*, 50 Cal. App. 4th at 1054–55 ("[K]nowledge that Marshall used his position of authority to extract or to coerce sexual favors is not knowledge that he would first drug and then attack a potential

---

[9] Allegations about King's alleged misconduct ***following*** his alleged assault of Suarez are, of course, irrelevant to the question of whether his alleged July 3rd assault of Suarez should have been foreseeable. *See* Compl. ¶ 73.

ENDEMOL DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES
ISO MOTION TO DISMISS PLAINTIFF SAMANTHA SUAREZ'S CLAIMS

employee. In the context of negligent hiring, those are qualitatively different situations."). [10] Suarez's allegations that Defendants knew or should have known that King "had a propensity to abuse alcohol" and was a "troublemaker" who disobeyed COVID-19 protocols fall even further afield given that they have nothing to do with sexual conduct of any kind. *Id.* ¶¶ 49–50, 189; *see Capital Cities*, 50 Cal. App. 4th at 1054 ("ABC's knowledge that Marshall personally used 'serious mind-altering drugs' does not equate with knowledge that he would surreptitiously use drugs to place a prospective employee into a situation of helplessness before violently assaulting him.").

Because Suarez fails to assert any facts indicating that King had a known history of sexual harassment or sexual assault, she fails to establish that Defendants had any reason to suspect that King would have a propensity for this alleged behavior. *See Vizcaino v. Areas USA, Inc.*, 2015 WL 13573816, at *7 (C.D. Cal. Apr. 17, 2015) (dismissing negligent retention claim because plaintiff "alleged no facts even suggesting that Defendant had any knowledge of any alleged risk posed by Estoban, and Plaintiff's conclusory allegations are insufficient to state a claim"); *Roman Catholic*, 42 Cal. App. 4th at 1565 (on summary judgment, finding church was not negligent in hiring a priest who sexually abused the plaintiff because "[t]here is nothing in the record to indicate [the priest] had a criminal history or had been previously implicated in sexual abuse").

Accordingly, because Suarez cannot satisfy the "duty" element of her negligence claims, the Court should dismiss both of her negligence-based causes of action.

---

[10] Suarez's allegations that a ***different*** "male cast member . . . repeatedly harassed" her have no bearing on whether ***King's*** alleged conduct was foreseeable. Compl. ¶ 46.

ENDEMOL DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES
ISO MOTION TO DISMISS PLAINTIFF SAMANTHA SUAREZ'S CLAIMS

## IV. **THE COURT SHOULD DISMISS SUAREZ'S CLAIMS WITH PREJUDICE BECAUSE NO AMENDMENT CAN SAVE THEM.**

Each and every one of Suarez's claims clearly and unavoidably fail, and no amendment can save them. Suarez cannot plead away the facts that King's alleged conduct took place in Italy, that she is a Georgia resident, or that King's job duties conclusively did not involve sexual harassment or assault. Nor can Suarez rewrite Section 52.4 to overcome its statutory prohibition against employer liability. Accordingly, because Suarez's claims "could not be saved by any amendment," the Court should dismiss them with prejudice. *Gadda v. State Bar of Cal.*, 511 F.3d 933, 939 (9th Cir. 2007) (quotations omitted).

## V. **CONCLUSION**

Suarez has failed to allege cognizable claims or sufficient facts in support of all sixteen causes of action asserted on her behalf in the Complaint. Therefore, the Court should grant this Motion and dismiss these claims with prejudice.

Dated: April 29, 2025                PROSKAUER ROSE LLP


By: _____
              Anthony J. Oncidi
        Attorneys for Defendants
MOUNTAIN VIEW PRODUCTIONS, LLC;
51 MINDS, LLC; 51 MINDS
ENTERTAINMENT, LLC; ENDEMOL
SHINE US OFFICE, LLC; and ENDEMOL
USA HOLDING, INC.

ENDEMOL DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES
ISO MOTION TO DISMISS PLAINTIFF SAMANTHA SUAREZ'S CLAIMS

## CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Defendants Mountain View Productions, LLC; 51 Minds, LLC; 51 Minds Entertainment, LLC; Endemol Shine US Office, LLC; and Endemol USA Holding, Inc., certifies that this brief contains 6,985 words, which complies with the word limit of L.R. 11-6.1.

Dated: April 29, 2025                    PROSKAUER ROSE LLP


By: _____
                                Anthony J. Oncidi
                                Attorneys for Defendants
                        MOUNTAIN VIEW PRODUCTIONS, LLC;
                        51 MINDS, LLC; 51 MINDS
                        ENTERTAINMENT, LLC; ENDEMOL
                        SHINE US OFFICE, LLC; and ENDEMOL
                        USA HOLDING, INC.

ENDEMOL DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES
ISO MOTION TO DISMISS PLAINTIFF SAMANTHA SUAREZ'S CLAIMS