PROSKAUER ROSE LLP
ANTHONY J. ONCIDI (SBN 118135)
aoncidi@ proskauer.com
PHILIPPE A. LEBEL (SBN 274032)
plebel@ proskauer.com
DIXIE M. MORRISON (SBN 341850)
dmorrison@proskauer.com
2029 Century Park East, 24th Floor
Los Angeles, CA  90067-3010
Telephone:   (310) 557-2900
Facsimile:(310) 557-2193

Attorneys for Defendants
MOUNTAIN VIEW PRODUCTIONS, LLC; 51
MINDS, LLC; 51 MINDS ENTERTAINMENT,
LLC; ENDEMOL SHINE US OFFICE, LLC; and
ENDEMOL USA HOLDING, INC.

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| SAMANTHA SUAREZ, an individual; and GREY DUDDLESTON, an individual,<br><br>                    Plaintiffs,<br><br>          vs.<br><br>NBCUNIVERSAL MEDIA, LLC, a Delaware limited liability company; BRAVO MEDIA, LLC, a Delaware limited liability company; MOUNTAIN VIEW PRODUCTIONS, LLC, a California limited liability company; 51 MINDS, LLC, a Delaware limited liability company; 51 MINDS ENTERTAINMENT, LLC, a New York limited liability company; ENDEMOL SHINE US OFFICE, LLC, a Delaware limited liability company; ENDEMOL USA HOLDING, INC., a Delaware corporation; GARY KING, an individual; and DOES 1-50, inclusive,<br><br>                    Defendants. | Case No. 2:25-cv-03568 GW (ADSx)<br><br>[Assigned to District Judge George H. Wu and Magistrate Judge Autumn D. Spaeth]<br><br>**DEFENDANTS MOUNTAIN VIEW PRODUCTIONS, LLC, 51 MINDS, LLC, 51 MINDS ENTERTAINMENT, LLC, ENDEMOL SHINE US OFFICE, LLC, AND ENDEMOL USA HOLDING, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO COMPEL ARBITRATION OF PLAINTIFF GREY DUDDLESTON'S CLAIMS**<br><br>[Notice of Motion and Motion, Declaration of Dixie M. Morrison, Declaration of Zachary Klein, and [Proposed] Order filed concurrently herewith]<br><br>Date: June 23, 2025<br>Time: 8:30 a.m.<br>Dept.: Courtroom 9D<br><br>Date Action Filed:  March 24, 2025<br><br>(*Los Angeles County Superior Court, Case No. 25STCV08353*) |

ENDEMOL DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES ISO MOTION TO COMPEL ARBITRATION OF PLAINTIFF GREY DUDDLESTON'S CLAIMS

# **TABLE OF CONTENTS**

**Page**

I.      INTRODUCTION. ..................................................................................................1

II.     FACTUAL BACKGROUND. ................................................................................2

      A.      Duddleston Agreed To Arbitrate Any Employment-Related Claims Arising Out Of His Employment On BDSY...........................................2

      B.      In March 2025, Duddleston Sued The Endemol Defendants, Alleging Claims Exclusively Subject To Arbitration. ...........................................4

      C.      The Endemol Defendants Informed Duddleston's Counsel Of Duddleston's Agreement To Arbitrate, But Duddleston Has Continued To Pursue This Lawsuit. ............................................................................5

III.    THE COURT SHOULD COMPEL ARBITRATION OF ALL OF DUDDLESTON'S CLAIMS. ................................................................................5

      A.      The FAA Requires Arbitration Of All Of Duddleston's Claims..........5

            1.      The Federal Arbitration Act Governs The Agreement...............5

            2.      The FAA Favors Arbitration. ....................................................6

      B.      Duddleston's Agreement, Which Encompasses All Of His Allegations In His Complaint, Is Valid And Enforceable...........................................7

            1.      Duddleston Executed A Valid Agreement To Arbitrate. ...........7

            2.      The Agreement Covers All Of Duddleston's Claims.................9

            3.      The EFAA Is Irrelevant To Duddleston's Agreement Or Claims. .....................................................................................10

            4.      Duddleston Is Equitably Estopped From Avoiding The Nonsignatory Defendants' Enforcement Of The Agreement...11

      C.      The Agreement Is Neither Procedurally Nor Substantively Unconscionable And, Therefore, Must Be Enforced..........................13

            1.      The Agreement Is Not Procedurally Unconscionable. .............13

            2.      The Agreement Is Not Substantively Unconscionable............14

            3.      Even If Some Portion Of The Agreement Were Objectionable, This Court Must Sever The Offensive Portion And Enforce The Remainder Of The Agreement..................................................15

      D.      After Compelling Arbitration, The Court Should Stay Duddleston's Claims..................................................................................................16

IV.     CONCLUSION. ...................................................................................................16

ENDEMOL DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES
ISO MOTION TO COMPEL ARBITRATION OF PLAINTIFF GREY
DUDDLESTON'S CLAIMS

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

CASES

*24 Hour Fitness, Inc. v. Super. Ct.*,
  66 Cal. App. 4th 1199 (1998) ...................................................................10

*Allied-Bruce Terminix Cos., Inc. v. Dobson*,
  513 U.S. 265 (1995) ...................................................................................6

*Armendariz v. Found. Health Psychcare Servs.*,
  24 Cal. 4th 83 (2000) ...............................................................8, 13, 14, 15

*AT&T Mobility LLC v. Concepcion*,
  563 U.S. 333 (2011) ...................................................................................7

*Brennan v. Opus Bank*,
  796 F.3d 1125 (9th Cir. 2015) ..................................................................15

*Circuit City Stores, Inc. v. Adams*,
  532 U.S. 105 (2001) ...................................................................................5

*Citizens Bank v. Alafabco, Inc.*,
  539 U.S. 52 (2003) .....................................................................................6

*E.E.O.C. v. Waffle House, Inc.*,
  534 U.S. 279 (2002) ...................................................................................5

*Enciso v. Staffmark Inv., LLC*,
  2023 WL 11195798 (C.D. Cal. Sept. 26, 2023) ......................................14

*Epic Sys. Corp. v. Lewis*,
  584 U.S. 497 (2018) ...................................................................................7

*Espejo v. S. Cal. Permanente Med. Grp.*,
  246 Cal. App. 4th 1047 ...............................................................................8

*Evenskaas v. Cal. Transit, Inc.*,
  81 Cal. App. 5th 285 (2022) .................................................................5, 6, 7

*Garcia v. Pexco, LLC*,
  11 Cal. App. 5th 782 (2017) .....................................................................11

*Gonzalez v. Nowhere Beverly Hills LLC*,
  107 Cal. App. 5th 111 (2024) ..............................................................11, 12

*Gould v. Hyundai Motor Co.*,
  2025 WL 26806 (C.D. Cal. Jan. 3, 2025) ................................................16

*Hansen v. Cal. Dep't of Corrs. & Rehab.*,
  171 Cal. App. 4th 1537 (2008) .................................................................12

ii

*Harris v. TAP Worldwide, LLC*,
  248 Cal. App. 4th 373 (2016)................................................................7

*Hong v. CJ CGV Am. Holdings, Inc.*,
  222 Cal. App. 4th 240 (2013)................................................................6

*In re: Orchid Child Prods., LLC*,
  2024 WL 1740741 (Bankr. C.D. Cal. Apr. 22, 2024)..........................6

*Khajavi v. Feather River Anesthesia Med. Grp.*,
  84 Cal. App. 4th 32 (2000)...................................................................12

*Kilgore v. KeyBank, Nat'l Ass'n*,
  718 F. 3d 1052 (9th Cir. 2013)..............................................................7

*Malone v. Super. Ct.*,
  226 Cal. App. 4th 1551 (2014)..............................................................7

*Marmet Health Care Ctr., Inc. v. Brown*,
  565 U.S. 530 (2012)................................................................................7

*McManus v. CIBC World Mkts. Corp.*,
  109 Cal. App. 4th 76 (2003)...........................................................13, 15

*Mendoza v. QVC, Inc.*,
  2021 WL 859998 (C.D. Cal. Mar. 8, 2021) .......................................15

*Mera v. SA Hospitality Group, LLC*,
  675 F. Supp. 3d 442 (S.D.N.Y. 2023) .................................................10

*Metalclad Corp. v. Ventana Envtl. Organizational P'ship*,
  109 Cal. App. 4th 1705 (2003)............................................................11

*Molecular Analytical Sys. v. Ciphergen Biosystems, Inc.*,
  186 Cal. App. 4th 696 (2010)................................................................7

*Nelsen v. Legacy Partners Residential, Inc.*,
  207 Cal. App. 4th 1115 (2012)..............................................................9

*Nickson v. Shemran, Inc.*,
  90 Cal. App. 5th 121 (2023).................................................................15

*O'Malley v. Wilshire Oil Co.*,
  59 Cal. 2d 482 (1963)...........................................................................10

*Patterson v. Domino's Pizza, LLC*,
  60 Cal. 4th 474 (2014)..........................................................................12

*Peng v. First Republic Bank*,
  219 Cal. App. 4th 1462 (2013)..............................................................9

*Phila. Indem. Ins. Co. v. SMG Holdings, Inc.*,
  44 Cal. App. 5th 834 (2019)..................................................................7

iii

*Roman v. Super. Ct.*,
  172 Cal. App. 4th 1462 (2009) .................................................................. 14

*Rowe v. Exline*,
  153 Cal. App. 4th 1276 (2007) .................................................................. 11

*Serafin v. Balco Props. Ltd., LLC*,
  235 Cal. App. 4th 165 (2015) ............................................................. 13, 14

*Smith v. Spizzirri*,
  601 U.S. 472 (2024) .................................................................................. 16

*Suarez et al v. NBCUniversal Media, LLC et al*,
  Case No. 2:25-cv-1774 (C.D. Cal.), ECF No. 1 (Los Angeles County Superior
  Court Case No. 25STCV05281) ................................................................... 4

*Vianna v. Doctors' Mgmt. Co*,
  27 Cal. App. 4th 1186 (1994) ...................................................................... 9

*Villasenor v. Dollar Tree Distrib, Inc.*,
  2024 WL 4452853 (C.D. Cal. Aug. 6, 2024) ............................................... 8

*Vo v. Tech. Credit Union*,
  108 Cal. App. 5th 632 (2025) ..................................................................... 14

*White v. Conduent Commercial Sols., LLC*,
  2024 WL 4373847 (E.D. Cal. Oct. 2, 2024) ................................................. 8

**STATUTES**

9 U.S.C. § 2 .............................................................................................. 5, 6, 7

Cal. Civ. Code
  § 1550 ........................................................................................................... 8
  § 1550(4) ...................................................................................................... 8
  § 1556 ........................................................................................................... 8
  § 1633.7(a) .................................................................................................... 8
  § 1633.9(a) .................................................................................................... 8

ENDEMOL DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES
ISO MOTION TO COMPEL ARBITRATION OF PLAINTIFF GREY
DUDDLESTON'S CLAIMS

## I.    <u>INTRODUCTION.</u>

Plaintiff Grey Duddleston ("Duddleston") filed this action (a second time) with co-plaintiff Samantha Suarez ("Suarez") on March 24, 2025, alleging six causes of action on his own behalf arising from his employment with Defendant Mountain View Productions, LLC ("Mountain View") as a camera operator on the popular unscripted television show *Below Deck Sailing Yacht* ("*BDSY*"). However, none of Duddleston's claims against Mountain View or Defendants 51 Minds, LLC; 51 Minds Entertainment, LLC; Endemol Shine US Office, LLC; or Endemol USA Holding, Inc. (collectively with Mountain View, the "Endemol Defendants") belong in court. Instead, they should be submitted to binding arbitration—as Duddleston previously agreed.

In May 2022, prior to the alleged events underlying this action, Duddleston executed an Arbitration Agreement (the "Agreement") in which he agreed "to submit any and all disputes arising out of, related to, or connected with [Duddleston's] employment with [Mountain View] (and its successors, predecessors, benefit plans, directors, officers, employees, supervisors and agents), including the termination of such employment, exclusively to final and binding arbitration." Declaration of Zachary Klein ("Klein Decl.") ¶ 11 & Ex. A at 1. *All* of Duddleston's causes of action in this lawsuit fall within the scope of the bilateral Agreement. The Agreement, which Duddleston voluntarily executed, is objectively reasonable and provides a fair and complete mechanism for resolving disputes, including those pursuant to the statutes under which he has asserted his claims in this lawsuit—*i.e.*, the California Labor Code and California Fair Employment and Housing Act (the "FEHA"), assuming that they apply to Duddleston's employment on a boat in the Mediterranean or in Italy where *BDSY* filmed. The Agreement binds both sides to the same procedures and is neither procedurally nor substantively unconscionable. The Supreme Court of the United States has emphasized that the Federal Arbitration Act (the "FAA")—which governs the Agreement—favors

ENDEMOL DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES
ISO MOTION TO COMPEL ARBITRATION OF PLAINTIFF GREY
DUDDLESTON'S CLAIMS

arbitration and also preempts state-law rules that interfere with the parties' ability to choose the efficiency of bilateral arbitration.

Duddleston is estopped from attempting to avoid arbitration against 51 Minds, 51ME, Endemol Shine, and Endemol USA (the "Nonsignatory Defendants") because they were not signatories to the Agreement itself. All of Duddleston's claims arise out of his employment, and Duddleston has alleged that the Nonsignatory Defendants were his employer—directly or indirectly. Duddleston cannot avoid arbitration by naming parties that were not signatories to his Agreement in connection with claims that otherwise unquestionably would be subject to arbitration against his employer.

Nor can Duddleston avoid arbitration based on the fact that his (former) girlfriend and co-plaintiff, Suarez, asserted a claim for sexual harassment. Duddleston's own claims do *not* assert causes of action for sexual harassment or sexual assault under federal, state or tribal law. Thus, the Ending Forced Arbitration of Sexual Assault and Sexual Harassment Act ("EFAA") does not apply.

Accordingly, because Duddleston agreed that arbitration is the **sole** forum for the resolution of his claims, the Endemol Defendants request the Court order Duddleston to submit all his claims to arbitration and stay this action, as Duddleston previously agreed to do.

## II.    FACTUAL BACKGROUND.

### A.    Duddleston Agreed To Arbitrate Any Employment-Related Claims Arising Out Of His Employment On *BDSY*.

Duddleston worked for Mountain View as a production crew member and camera operator. *See* Complaint ("Compl.") ¶ 16. On May 10, 2022, Duddleston executed the Agreement, which detailed his express agreement to privately arbitrate all disputes arising out of or related to his employment with Mountain View, pursuant to the employment arbitration rules and procedures of the American Arbitration Association ("AAA"). *See* Klein Decl. ¶ 11 & Ex. A at 1.

2

ENDEMOL DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES ISO MOTION TO COMPEL ARBITRATION OF PLAINTIFF GREY DUDDLESTON'S CLAIMS

Specifically, at the time of Duddleston's hire on *BDSY* in 2022, Mountain View required that, as a condition of employment, all *BDSY* crew members, including Duddleston, acknowledge and sign the Agreement prior to performing any work on the *BDSY* production. *Id.* ¶ 7. Accordingly, Duddleston could not begin work on the *BDSY* production in 2022 until he signed the Agreement. *Id.*

Cast & Crew LLC ("Cast & Crew"), the company that Mountain View used to provide employer-of-record and payroll services for *BDSY*, sent an email to the personal email address of each *BDSY* crew member, including Duddleston, containing a link for the crew member to click to activate their Cast & Crew account. *Id.* ¶¶ 4, 8. Cast & Crew sent this email to Duddleston's personal email address, which is the email address that Duddleston provided to Mountain View to use for all communications with Duddleston relating to his employment on *BDSY*. *Id.* ¶ 8. Upon Duddleston clicking the link in this email from Cast & Crew, Cast & Crew prompted Duddleston to create a new, unique password known only to Duddleston. *Id.* Once Duddleston created the new password, Cast & Crew directed him to sign in again using the new, unique password for Duddleston to review and acknowledge the Agreement. *Id.* The Cast & Crew system is secure and confidential; only an individual with Duddleston's unique password could access his account to review and sign the Agreement. *Id.* Because Duddleston's new, unique password was known only to him, only Duddleston could have accessed his Cast & Crew account to access, review, and sign, the Agreement. *Id.*

The unique password that each Mountain View crew member, including Duddleston, created to access their Cast & Crew account remained strictly confidential and is unknown to Mountain View. *Id.* ¶ 9. If a *BDSY* crew member forgets their password, neither Cast & Crew nor Mountain View has any way to retrieve or change it. *Id.* Cast & Crew's system can only manually "reset" the crew member's account to allow them to create a new password, just as if the crew member was a new user. *Id.* Furthermore, since at least April 2022 through the present, neither Cast & Crew nor

ENDEMOL DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES
ISO MOTION TO COMPEL ARBITRATION OF PLAINTIFF GREY
DUDDLESTON'S CLAIMS

Mountain View has had the ability to sign or acknowledge any documents—including, without limitation, the New Hire Paperwork—on any crew member's behalf. *Id.*

Mountain View emailed Duddleston the Agreement on April 11, 2022, and Duddleston electronically signed the Agreement on May 10, 2022, using Cast & Crew's Start+ system. *Id*. ¶ 10.

### B.      In March 2025, Duddleston Sued The Endemol Defendants, Alleging Claims Exclusively Subject To Arbitration.

On March 24, 2025, Duddleston and Suarez filed the Complaint in Los Angeles County Superior Court, in which Duddleston alleges, in relevant part, that the Endemol Defendants, along with NBCUniversal Media, LLC and Bravo Media LLC (erroneously sued as "Bravo Media, LLC"), retaliated against him for reporting unlawful conduct, failed to prevent retaliation, wrongfully terminated his employment, and intentionally and negligently inflicted emotional distress upon him. *See* Compl. ¶¶ 153–86, 197–221.[1] Suarez separately asserts causes of action *on her own behalf* for alleged sexual assault and sexual harassment that she claims to have experienced at the hands of one of *BDSY*'s cast members, Gary King ("King"); however, Duddleston does ***not*** allege that he ***personally*** experienced any sexual assault or sexual harassment. *See id*. ¶¶ 93–140 (emphasis added) (Complaint's causes of action for battery, assault, gender violence, and FEHA harassment alleged on behalf of Suarez only). The Endemol Defendants removed this lawsuit to the U.S. District Court for the Central District of California on April 22, 2025. *See* ECF No. 1.

Duddleston's Agreement covers ***all*** the claims Duddleston asserts on his own behalf in the Complaint, namely:

> [C]laims arising under the California Labor Code, . . . civil tort and
> employment discrimination (including claims brought under . . . the

[1] Duddleston and Suarez had filed a prior ***identical*** action on February 25, 2025, which the Endemol Defendants removed to federal court on February 28, 2025. *See Suarez et al v. NBCUniversal Media, LLC et al*, Case No. 2:25-cv-1774 (C.D. Cal.), ECF No. 1 (Los Angeles County Superior Court Case No. 25STCV05281) ("*Suarez I*"). Duddleston and Suarez voluntarily dismissed *Suarez I* on March 24, 2025. *See id.*, ECF No. 12.

ENDEMOL DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES
ISO MOTION TO COMPEL ARBITRATION OF PLAINTIFF GREY
DUDDLESTON'S CLAIMS

California Fair Employment and Housing Act, . . . all as amended, and any other local, state or federal anti-discrimination or employment statute), and any other employment laws, except only claims which may not, by statute, be arbitrated.

Klein Decl. ¶ 11 & Ex. A at 1 (emphasis added).

### C. The Endemol Defendants Informed Duddleston's Counsel Of Duddleston's Agreement To Arbitrate, But Duddleston Has Continued To Pursue This Lawsuit.

In an attempt to avoid needless litigation and motion practice, the Endemol Defendants' Counsel notified Duddleston's counsel that Duddleston had executed the Agreement. Declaration of Dixie M. Morrison ¶ 2. However, to date, Duddleston has not agreed to arbitrate his claims. *Id.*

## III. THE COURT SHOULD COMPEL ARBITRATION OF ALL OF DUDDLESTON'S CLAIMS.

### A. The FAA Requires Arbitration Of *All* Of Duddleston's Claims.

#### 1. The Federal Arbitration Act Governs The Agreement.

The Agreement is subject to the FAA. Notably, the parties acknowledged and agreed as much in the Agreement itself. *See* Klein Decl. ¶ 11 & Ex. A at 1–2 ("[T]he Federal Arbitration Act shall govern the interpretation and enforcement of, and all proceedings pursuant to, this Agreement."). Yet, even in the absence of the above recitation, the FAA "compels judicial enforcement of a wide range of written arbitration agreements." *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 111 (2001). Section 2 of the FAA states:

A written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2.

"Employment contracts, except for those covering workers engaged in transportation, are covered by the FAA." *E.E.O.C. v. Waffle House, Inc.*, 534 U.S. 279, 289 (2002); *see also Evenskaas v. Cal. Transit, Inc.*, 81 Cal. App. 5th 285, 292 (2022)

ENDEMOL DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES ISO MOTION TO COMPEL ARBITRATION OF PLAINTIFF GREY DUDDLESTON'S CLAIMS

(same). Specifically, the FAA's reference to contracts "evidencing a transaction involving commerce," 9 U.S.C. § 2, reflects Congress's intent "to exercise [its] commerce power to the full" and simply requires that "the 'transaction' in fact 'involve' interstate commerce, even if the parties did not contemplate an interstate commerce connection." *Allied-Bruce Terminix Cos., Inc. v. Dobson*, 513 U.S. 265, 277, 281 (1995) (cleaned up); *see also Evenskaas*, 81 Cal. App. 5th at 292 (citations omitted).

A minimal showing is required to demonstrate a "transaction involving commerce" under the FAA. *See Citizens Bank v. Alafabco, Inc.*, 539 U.S. 52, 56–57 (2003) (citations omitted); *Evenskaas*, 81 Cal. App. 5th at 294 (same).

Here, the Agreement falls within the ambit of the FAA. Duddleston is a resident of Georgia, and his allegations in the Complaint concern events that allegedly took place overseas, in Sardinia, Italy and/or on a boat in the Mediterranean Sea. *See* Compl. ¶¶ 2, 16. Duddleston entered into the Agreement in connection with, as relevant to this lawsuit, his work as a camera operator on *BDSY*, a cable television show broadcast across the United States and internationally. Klein Decl. ¶ 6. Duddleston's job duties as a camera operator included, among other duties, filming content for *BDSY*. *See* Compl. ¶ 13. Accordingly, his position involved interstate commerce. *See, e.g.*, *Hong v. CJ CGV Am. Holdings, Inc.*, 222 Cal. App. 4th 240, 250–51 (2013) (finding that contracts involving "a television network" with programming "directed" across the country "involve[d] interstate commerce); *In re: Orchid Child Prods., LLC*, 2024 WL 1740741, at *4 (Bankr. C.D. Cal. Apr. 22, 2024) (finding that a contract "for the making and distribution of [a] documentary film in interstate commerce" related to interstate commerce).[2]

Therefore, the FAA governs the Agreement.

### 2.    The FAA Favors Arbitration.

The FAA reflects "a liberal federal policy favoring arbitration agreements,

---

[2] Furthermore, the parties expressly acknowledged in the Agreement that Duddleston "is engaged in transactions involving interstate commerce[.]" Klein Decl. ¶ 11 & Ex. A at 1.

ENDEMOL DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES
ISO MOTION TO COMPEL ARBITRATION OF PLAINTIFF GREY
DUDDLESTON'S CLAIMS

notwithstanding any state substantive or procedural policies to the contrary." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 346 (2011) (quotation omitted); *Evenskaas*, 81 Cal. App. 5th at 291 (same); *see also Malone v. Super. Ct.*, 226 Cal. App. 4th 1551, 1568 (2014) (finding that state unconscionability "rules must not facially discriminate against arbitration and must be enforced evenhandedly") (quotation omitted). Thus, "federal courts must enforce the [FAA] with respect to all arbitration agreements covered by that statute." *Marmet Health Care Ctr., Inc. v. Brown*, 565 U.S. 530, 530–31 (2012) (citations omitted); *see also Epic Sys. Corp. v. Lewis*, 584 U.S. 497, 506 (2018) ("Congress require[d] courts to respect and enforce agreements to arbitrate . . . .").[3]

## B.    Duddleston's Agreement, *Which Encompasses All Of His Allegations In His Complaint*, Is Valid And Enforceable.

The FAA provides that arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract . . . ." 9 U.S.C. § 2. Within the context of this strong public policy, a court ***must*** compel arbitration where it finds that (1) a valid arbitration agreement exists and (2) "the agreement encompasses the dispute at issue." *Kilgore v. KeyBank, Nat'l Ass'n*, 718 F. 3d 1052, 1058 (9th Cir. 2013) (quotations omitted); *see also Phila. Indem. Ins. Co. v. SMG Holdings, Inc.*, 44 Cal. App. 5th 834, 840 (2019) (same). Both prerequisites are satisfied here.

### 1.    Duddleston Executed A Valid Agreement To Arbitrate.

Duddleston unquestionably assented to the Agreement on May 10, 2022, which he executed electronically. Under California law, a valid contract exists when (1) the parties are capable of contracting, and there is (2) a lawful object, (3) mutual consent,

---

[3] California state courts generally have applied principles favoring arbitration as well. *See generally Harris v. TAP Worldwide, LLC*, 248 Cal. App. 4th 373, 380 (2016) ("California law favors enforcement of valid arbitration agreements."); *Molecular Analytical Sys. v. Ciphergen Biosystems, Inc.*, 186 Cal. App. 4th 696, 704 (2010) ("[T]here is a strong public policy favoring contractual arbitration.").

ENDEMOL DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES ISO MOTION TO COMPEL ARBITRATION OF PLAINTIFF GREY DUDDLESTON'S CLAIMS

and (4) sufficient cause or consideration. *See* Cal. Civ. Code § 1550. Each of these requirements is satisfied here.

**First**, there is no dispute Duddleston and Mountain View were capable of contracting. *See* Cal. Civ. Code § 1556 ("All persons are capable of contracting, except minors, persons of unsound mind, and persons deprived of civil rights.").

**Second**, the Agreement plainly has a lawful purpose: the prompt and efficient resolution of employment-related disputes. *See Villasenor v. Dollar Tree Distrib, Inc.*, 2024 WL 4452853, at *5 (C.D. Cal. Aug. 6, 2024) ("[R]esolution of disputes through arbitration is a 'lawful object.'") (citations omitted).

**Third**, both parties consented to the Agreement. As explained above, Duddleston electronically assented to the Agreement. Under California law, "an electronic signature has the same legal effect as a handwritten signature." *Espejo v. S. Cal. Permanente Med. Grp.*, 246 Cal. App. 4th 1047, 1061 (quotations omitted); *see also* Cal. Civ. Code § 1633.7(a); *id.* at § 1633.9(a).

Accordingly, courts consistently hold that clicking a button on a computer screen is a valid form of electronic signature. *See, e.g.*, *Espejo*, 246 Cal. App. 4th at 1062–63 (enforcing arbitration agreement accepted by electronic signature); *White v. Conduent Commercial Sols., LLC*, 2024 WL 4373847, at *9 (E.D. Cal. Oct. 2, 2024) (enforcing arbitration agreement where the signature process included "the offeree . . . click[ing] a button acknowledging her agreement"). Mountain View's electronic records memorializing Duddleston's assent to the terms of the Agreement demonstrate that Duddleston reviewed and electronically signed his name to the Agreement on May 10, 2022. *See* Klein Decl. ¶¶ 7–10.

**Finally**, the consideration for an arbitration agreement is legally adequate where, as here, each party agrees to be bound by the arbitration process. *See Armendariz v. Found. Health Psychcare Servs.*, 24 Cal. 4th 83, 118 (2000); *see generally* Cal. Civ. Code § 1550(4).

## 2.    The Agreement Covers *All* Of Duddleston's Claims.

The Agreement broadly covers "***any and all*** disputes arising out of, related to, or connected with [Duddleston's] employment with [Mountain View] . . . including the termination of such employment[.]" Klein Decl. ¶ 11 & Ex. A at 1 (emphasis added); *see also id.* (Covered disputes "include[e], but [are] not limited to . . . claims arising under the California Labor Code, . . . civil tort and employment discrimination (including claims brought under the California Fair Employment and Housing Act . . . and any other local, state or federal anti-discrimination or employment statute), and any other employment laws[.]"). The ***only*** claims not subject to arbitration are claims (1) for workers' compensation or unemployment benefits; (2) under an employee benefit plan; (3) before the National Labor Relations Board, the U.S. Equal Employment Opportunity Commission, or California Civil Rights Department (previously the Department of Fair Employment and Housing); and (4) "which parties are legally prohibited from submitting to arbitration" or "which may not, by statute, be arbitrated." *Id.* at 1–2 (emphasis added).

***None*** of the causes of action asserted in the Complaint falls within the subset of claims not subject to arbitration. Rather, all of Duddleston's causes of action under the Labor Code and the FEHA indisputably are included in the definition of disputes covered by the Agreement. The same is true of Duddleston's wrongful termination, intentional infliction of emotional distress ("IIED"), and negligent infliction of emotional distress ("NIED") claims. *See, e.g.*, *Nelsen v. Legacy Partners Residential, Inc.*, 207 Cal. App. 4th 1115, 1136–37 (2012) (affirming order granting motion to compel to arbitration claims brought under the Labor Code); *Peng v. First Republic Bank*, 219 Cal. App. 4th 1462, 1465 (2013) (reversing denial of motion to compel arbitration claims for FEHA discrimination, wrongful termination, and IIED); *Vianna v. Doctors' Mgmt. Co*, 27 Cal. App. 4th 1186, 1190 (1994) (same, for claims for wrongful termination and NIED).

Accordingly, all of Duddleston's claims in the Complaint are subject to arbitration

9

under the Agreement. *See O'Malley v. Wilshire Oil Co.*, 59 Cal. 2d 482, 491 (1963) (citations omitted) ("'[O]nly the most forceful evidence of a purpose to exclude the claim from arbitration can prevail, particularly where, as here . . . the arbitration clause [is] quite broad.' . . . [T]he arbitration clause covers the grievance in the absence of manifest exclusion."); *24 Hour Fitness, Inc. v. Super. Ct.*, 66 Cal. App. 4th 1199, 1205 (1998) (finding that arbitration agreement covering "any dispute arising from [plaintiff's] employment" included any claims based on factual allegations relating to employment).

### 3. The EFAA Is Irrelevant To Duddleston's Agreement Or Claims.

Based on meet-and-confer communications with Duddleston's counsel, the Endemol Defendants anticipate that Duddleston will argue that the Agreement is not enforceable in this case due to the enactment of the EFAA, which amended the FAA to permit signatories to an arbitration agreement to avoid arbitration at their election in the case of sexual assault or sexual harassment disputes under federal, state, or tribal law. However, whatever its application to Suarez, the EFAA is irrelevant to the claims asserted by Duddleston and is not an impediment to arbitration.

Notably, Duddleston does not allege that he *personally* experienced sexual harassment or assault. *See* Compl. ¶¶ 93–140 (Complaint's causes of action for battery, assault, gender violence, and FEHA harassment alleged on behalf of Suarez only). Those claims are asserted exclusively by Suarez. *Id.* Accordingly, the EFAA does not invalidate the Agreement as applied to Duddleston's own claims.

*Mera v. SA Hospitality Group, LLC*, 675 F. Supp. 3d 442 (S.D.N.Y. 2023), is instructive. In that case, the court found that the plaintiff's complaint sufficiently alleged sexual harassment as to himself. *Id.* at 446–47. The court nonetheless compelled to arbitration claims that the plaintiff alleged on behalf of *other* individuals who had *not* experienced the alleged sexual harassment that the plaintiff claimed he personally experienced. *See id.* at 447 (finding that EFAA did not invalidate an

ENDEMOL DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES
ISO MOTION TO COMPEL ARBITRATION OF PLAINTIFF GREY
DUDDLESTON'S CLAIMS

otherwise enforceable arbitration agreement as to "individuals having nothing to do with the particular sexual harassment affecting the plaintiff alone").[4] The same result is warranted here—*i.e.*, whereas Suarez (who alleges she personally experienced sexual harassment) can avoid arbitration, Duddleston (who does not allege he personally experienced sexual harassment) *cannot*.

Accordingly, the EFAA does not invalidate Duddleston's Agreement or its applicability to his claims asserted in the Complaint.

### 4. Duddleston Is Equitably Estopped From Avoiding The Nonsignatory Defendants' Enforcement Of The Agreement.

Even though the Nonsignatory Defendants are not signatories to the Agreement, Duddleston is estopped from evading the Agreement by suing the Nonsignatory Defendants in court.

"[T]he equitable estoppel doctrine applies when a party has signed an arbitration agreement but attempts to avoid arbitration by suing non-signatory defendants for claims that are based on the same facts and are inherently inseparable from arbitrable claims against signatory defendants." *Metalclad Corp. v. Ventana Envtl. Organizational P'ship*, 109 Cal. App. 4th 1705, 1713 (2003) (quotations omitted). "Claims that rely upon, make reference to, or are intertwined with claims under the subject contract are arbitrable." *Rowe v. Exline*, 153 Cal. App. 4th 1276, 1287 (2007) (citing *Boucher v. All. Title Co., Inc.*, 127 Cal. App. 4th 262, 269–70 (2005)). To be inherently inseparable, "a claim 'arising out of' a contract does not itself need to be contractual." *Garcia v. Pexco, LLC*, 11 Cal. App. 5th 782, 786 (2017).

*Gonzalez v. Nowhere Beverly Hills LLC*, 107 Cal. App. 5th 111 (2024), is instructive. In that case, the court found that the moving defendants could compel the plaintiff to arbitration even though (1) the movants were not signatories to the

---

[4] Due to the EFAA's recent enactment (in 2021), few published decisions have interpreted its provisions, and the Endemol Defendants have been unable to locate any cases within the Ninth Circuit addressing this particular issue.

ENDEMOL DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES ISO MOTION TO COMPEL ARBITRATION OF PLAINTIFF GREY DUDDLESTON'S CLAIMS

arbitration agreement and (2) the plaintiff asserted only statutory claims (primarily under the Labor Code). Because all of the plaintiff's claims "depend[ed] on the [non-signatory defendants'] status as joint employers," the plaintiff's theory of liability against the non-signatory defendants relied upon them being his joint employer:

> Because Gonzalez agreed to arbitrate his wage and hour claims against [his employer], and because his theory of liability against the [non-signatory defendants] is that they exercised significant control over [his employer's] employees so as to share its legal obligations, he is equitably estopped from raising the [non-signatory defendants'] nonsignatory status to oppose arbitrating his wage and hour claims against them. ***In other words, it would be unfair for Gonzalez to group the [non-signatory defendants] with [his employer] for purposes of wage and hour liability as joint employers while at the same time denying the joint relationship in order to avoid arbitration***.

*Id*. at 124 (citations omitted) (emphasis added).

Here, similarly, Duddleston agreed to arbitrate "any and all disputes arising out of, related to, or connected with [his] employment with" Mountain View. Klein Decl. ¶ 11 & Ex. A at 1. And, also like in *Gonzalez*, Duddleston's claims against the Nonsignatory Defendants all are predicated upon the Nonsignatory Defendants allegedly acting as his employer. *See Patterson v. Domino's Pizza, LLC*, 60 Cal. 4th 474, 499 (2014) ("[T]he existence of 'an employment relationship'" is "essential" to a FEHA claim.); *Khajavi v. Feather River Anesthesia Med. Grp.*, 84 Cal. App. 4th 32, 53 (2000) ("As a matter of law, only an employer can be liable for the tort of wrongful discharge in violation of public policy."); *Hansen v. Cal. Dep't of Corrs. & Rehab.*, 171 Cal. App. 4th 1537, 1546 (2008) ("[A] prerequisite to asserting a Labor Code section 1102.5 violation is the existence of an employer-employee relationship at the time the allegedly retaliatory action occurred."). Furthermore, Duddleston's NIED claim relies upon the premise that the Endemol Defendants acted as his employer. *See* Compl. ¶ 217 (alleging that the Endemol Defendants "owed Plaintiffs, ***as employees*** under their supervision, a duty of care not to subject them to discrimination, harassment, and/or retaliatory behavior") (emphasis added). Finally, Duddleston's IIED claim is merely derivative of his other, employment-related claims alleged in the Complaint. *See id*. at ¶ 209 ("The

ENDEMOL DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES ISO MOTION TO COMPEL ARBITRATION OF PLAINTIFF GREY DUDDLESTON'S CLAIMS

misconduct . . . *described herein* was outrageous and extreme and transcended the
bounds of human decency.") (emphasis added).

To this end, Duddleston himself alleges that "[a]t all relevant times herein, each
of the Defendants was the agent, servant, employee, employer, joint-venturer, partner,
and/or alter ego of each of the named Defendants" and that he was an "employee[] of 51
Minds as an alter ego of Mountain View and Endemol Shine." *Id.* at ¶¶ 28–29.
Accordingly, as the Court of Appeal found in *Gonzalez*, in seeking to evade arbitration
with the Nonsignatory Defendants Duddleston unfairly tries to have his cake and eat it too.
Duddleston wants the Nonsignatory Defendants to be a "joint-venturer, partner, and/or
alter ego" with Mountain View for liability purposes but disclaims that purported
employer relationship when it comes to enforcing the Agreement. The Court should reject
this gamesmanship and compel Duddleston's claims against *all* the Endemol Defendants
to arbitration.

## C.    The Agreement Is Neither Procedurally Nor Substantively Unconscionable And, Therefore, Must Be Enforced.

Under California law, a contract is enforceable unless it is *both* procedurally and
substantively unconscionable. *See Armendariz*, 24 Cal. 4th at 114 (emphasis added).
Here, there are no grounds for revocation of the Agreement on the basis of
unconscionability.

### 1.    The Agreement Is Not Procedurally Unconscionable.

Procedural unconscionability "focuses on whether there is 'oppression' arising
from an inequality of bargaining power or 'surprise' arising from buried terms in a
complex printed form." *McManus v. CIBC World Mkts. Corp.*, 109 Cal. App. 4th 76,
87 (2003). "Surprise involves the extent to which the terms of the bargain are hidden
in a prolix printed form drafted by a party in a superior bargaining position." *Serafin v.
Balco Props. Ltd., LLC*, 235 Cal. App. 4th 165, 177 (2015). Oppression, on the other
hand, "arises from an inequality of bargaining power which results in no real

ENDEMOL DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES
ISO MOTION TO COMPEL ARBITRATION OF PLAINTIFF GREY
DUDDLESTON'S CLAIMS

1  negotiation and an absence of meaningful choice." *Id.*

2  Here, the Agreement involves no "surprise." It is a two-page document printed

3  in legible text. *See* Klein Decl. ¶ 11 & Ex. A.

4  Likewise, there is no evidence of "oppression." In the employment context, even

5  a contract of adhesion, absent any "substantively unconscionable or otherwise invalid"

6  terms, presents minimal oppression. *Vo v. Tech. Credit Union*, 108 Cal. App. 5th 632,

7  643 (2025) (quotations omitted); *see also id.* (finding "a minimal degree of procedural

8  unconscionability" even where the plaintiff "was required to sign the agreement as a

9  condition of employment"). Thus, the fact that Duddleston may have entered into the

10  Agreement as a condition of his employment does not establish any material degree of

11  procedural unconscionability.

12  ### 2.    The Agreement Is Not Substantively Unconscionable.

13  Procedural    unconscionability    must    be    coupled    with    substantively

14  unconscionable terms to invalidate an arbitration agreement. *See Roman v. Super. Ct.*,

15  172 Cal. App. 4th 1462, 1471 (2009) ("[P]rocedural unconscionability alone does not

16  render an agreement unenforceable. There must also be some measure of substantive

17  unconscionability."). Here, because any procedural unconscionability is nonexistent or

18  minimal if at all, Duddleston must demonstrate a ***substantial*** degree of substantive

19  unconscionability to avoid enforcement. *See Enciso v. Staffmark Inv., LLC*, 2023 WL

20  11195798, at *4 (C.D. Cal. Sept. 26, 2023) (finding that "a higher level of substantive

21  unconscionability is required to render the contract unenforceable" where plaintiff did

22  not show a significant amount of procedural unconscionability, even though contract

23  was one of adhesion); *Serafin*, 235 Cal. App. 4th at 181 ("Under the sliding-scale

24  approach, [the plaintiff] is obligated to make a strong showing of substantive

25  unconscionability to render the arbitration provision unenforceable.").

26  The substantive element of unconscionability is concerned with whether a contract

27  imposes "overly harsh" or "one-sided" results. *Armendariz*, 24 Cal. 4th at 114 (citations

28

14

omitted). However, complete bilaterality is not required. Rather, to be enforceable, an arbitration agreement need only reflect a "modicum of bilaterality." *Id.* at 117.

Here, the Agreement satisfies this low standard. Both Duddleston and his employer (*i.e.*, Mountain View) are bound to submit claims to arbitration, subject to the same rules and procedures. *See McManus*, 109 Cal. App. 4th at 101 (finding no substantive unconscionability where the arbitration agreement's governing rules "mutually bind the parties to arbitration"). As numerous courts have recognized, the applicable AAA rules—*i.e.*, AAA's Employment Arbitration Rules and Mediation Procedures—provide a fair mechanism for the adjudication of employment-related claims. *See, e.g.*, *Brennan v. Opus Bank*, 796 F.3d 1125 (9th Cir. 2015) (affirming arbitration agreement that incorporated AAA rules); *Mendoza v. QVC, Inc.*, 2021 WL 859998 (C.D. Cal. Mar. 8, 2021) (same).

Because the Agreement lacks either procedural or substantive unconscionability, no basis exists for refusing to enforce it.

### 3. Even If Some Portion Of The Agreement Were Objectionable, This Court Must Sever The Offensive Portion And Enforce The Remainder Of The Agreement.

A court should sever offending provisions from an arbitration agreement unless it is "'permeated' by unconscionability." *Armendariz*, 24 Cal. 4th at 122; *see also Nickson v. Shemran, Inc.*, 90 Cal. App. 5th 121, 130 (2023) (severing unenforceable provision from arbitration agreement because defendant "is entitled to enforce other terms of the Agreement, unless they are invalid for some independent reason"). As discussed above, there is nothing unconscionable in the Agreement. Yet, even if there were, the Agreement is far from "permeated" with any alleged unconscionability. Therefore, even if some aspect or clause of the Agreement could be deemed unconscionable in some respect, it should be severed and the remainder of the Agreement should be enforced in full.

ENDEMOL DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES ISO MOTION TO COMPEL ARBITRATION OF PLAINTIFF GREY DUDDLESTON'S CLAIMS

### D. After Compelling Arbitration, The Court Should Stay Duddleston's Claims.

Upon granting this Motion, the Court should stay Duddleston's claims in their entirety. *See Smith v. Spizzirri*, 601 U.S. 472, 478 (2024); *see also Gould v. Hyundai Motor Co.*, 2025 WL 26806, at *13 (C.D. Cal. Jan. 3, 2025) (staying case pending arbitration).

## IV. CONCLUSION.

For the foregoing reasons, the Court should compel to binding arbitration each and every one of Duddleston's claims in accordance with his valid, enforceable, and irrevocable Agreement. Thereafter, all proceedings in this Court relating to Duddleston's claims must be stayed pending the outcome of the arbitration.

Dated: April 29, 2025

PROSKAUER ROSE LLP
ANTHONY J. ONCIDI
PHILIPPE A. LEBEL
DIXIE M. MORRISON


By: _____
Anthony J. Oncidi
Attorneys for Defendants
MOUNTAIN VIEW PRODUCTIONS, LLC;
51 MINDS, LLC; 51 MINDS
ENTERTAINMENT, LLC; ENDEMOL
SHINE US OFFICE, LLC; and ENDEMOL
USA HOLDING, INC.

16

## <u>CERTIFICATE OF COMPLIANCE</u>

The undersigned, counsel of record for Defendants Mountain View Productions, LLC; 51 Minds, LLC; 51 Minds Entertainment, LLC; Endemol Shine US Office, LLC; and Endemol USA Holding, Inc., certifies that this brief contains 4,972 words, which complies with the word limit of L.R. 11-6.1.

 Dated: April 29, 2025                    PROSKAUER ROSE LLP


                                          By: _____
                                                  Anthony J. Oncidi
                                                Attorneys for Defendants
                                          MOUNTAIN VIEW PRODUCTIONS, LLC;
                                          51 MINDS, LLC; 51 MINDS
                                          ENTERTAINMENT, LLC; ENDEMOL
                                          SHINE US OFFICE, LLC; and ENDEMOL
                                          USA HOLDING, INC.

ENDEMOL DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES
ISO MOTION TO COMPEL ARBITRATION OF PLAINTIFF GREY
DUDDLESTON'S CLAIMS